# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

# Appeal No. 09-56473
# Cross-Appeal No. 09-56662

―――――――――――

CONTEMPORARY SERVICES CORPORATION,
*Plaintiff and Appellant,*

vs.

LANDMARK EVENT STAFFING SERVICES, INC., PETER
KRANSKE AND MICHAEL HARRISON,
*Defendants and Appellees.*

―――――――――――

On Appeal From Judgment on Motion to Dismiss
and Order Denying Request for Attorneys' Fees
United States District Court
Central District of California
Case No. 8:09-cv-00681-AG (ANx)
[The Honorable Andrew J. Guilford]

―――――――――――

# APPELLEES' REPLY BRIEF ON CROSS-APPEAL
# (FOURTH BRIEF)

―――――――――――

THE AVANZADO LAW FIRM

MELVIN N.A. AVANZADO (BAR NO. 137127)
1880 CENTURY PARK EAST
SUITE 1404
LOS ANGELES, CALIFORNIA 90067
310.552.9300 TELEPHONE
310.388.5330 FACSIMILE

**ATTORNEYS FOR DEFENDANTS AND APPELLEES
LANDMARK EVENT STAFFING SERVICES, INC., PETER KRANSKE
AND MICHAEL HARRISON**

# **TABLE OF CONTENTS**

**Page**

I    INTRODUCTION ...................................................................................1

II   THE LANDMARK PARTIES PROVIDED THE CORRECT
     STANDARDS FOR APPELLATE REVIEW.......................................2

    A.    De Novo Review Is Proper......................................................2

    B.    CSC's Contention That The "Clear Error" Standard Applicable To
           Factual  Determinations Should Be Applied To This Cross-Appeal Is
           Meritless ..................................................................................4

III  THE LEGAL STANDARDS USED BY THE DISTRICT COURT
     TO DENY FEES ARE MORE STRINGENT THAN THE
     LANDMARK PARTIES WERE REQUIRED TO PROVE............................6

    A.    The District Court Blurred "Objectively Specious" And "Bad Faith"
           With "Frivolous" To Apply A More Rigorous (And Erroneous) Legal
           Standard To The Fees Motion ................................................7

    B.    CSC's Claims Are Objectively Specious .................................10

        1.    The Proper Legal Standard For "Objectively Specious" ...................10

        2.    The Landmark Parties Do Not Have To Show That CSC's Claims
                 Had Absolutely No Merit To Establish That The Are "Objectively
                 Specious"...........................................................................11

    C.    CSC's Claims Were Made In Bad Faith .................................13

        1.    Subjective Bad Faith May Be Inferred From Circumstantial
                 Evidence  ...........................................................................13

        2.    CSC's Delay In Bringing This Case Against The Landmark
                 Parties Continues Its Pattern And Practice Of Using
                 Litigation Against Its Competitors.......................................15

        3.    CSC Cannot Escape The Consequences Of Its Conduct
                 Because The Legal Analysis Was "Complicated" ..............................19

# TABLE OF CONTENTS

Page

4.  CSC's Complaint Fails To State A Claim For Many
    Reasons Other Than The Bar Of Res Judicata....................................21

5.  The Res Judicata Analysis Is Not As Complicated
    As CSC Makes It Seem ......................................................................22

    a.  CSC Seeks To Limit The Res Judicata Doctrine
    Contrary To Well-Settled Authorities .............................................. 223

    b.  CSC Attempts To Shift Fault For Its Litigation Conduct ........... 224

IV   CONCLUSION.................................................................................27

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alamar Biosciences, Inc. v. Difco Lab., Inc.*,
  1996 WL 784495 (E.D. Cal. 1996) ................................................. 10, 15, 21, 23,

*Ashcroft v. Iqbal*,
  __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ........................ 13, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .............................. 13, 14

*Carver v. Chevron U.S.A.*,
  97 Cal.App.4th 132, 118 Cal.Rptr.2d 569 (2002) ...................................................3

*Coalition for Clean Air v. Southern California Edison Co.*,
  971 F.2d 219, 229 (9th Cir. 1992) ..........................................................................3

*Connerly v. State Pers. Bd.*,
  37 Cal.4th 1169, 39 Cal.Rptr.3d 788 (2006) .......................................................3, 4

*Constantini v. Trans World Airlines*,
  681 F.2d 1199 (9th Cir. 1982) ..............................................................................27

*Contemporary Services Corporation v. Staff Pro Inc.*,
  152 Cal.App.4th 1043, 61 Cal.Rptr.3d 434 (2007) ...................................... 19, 20

*Coury v. Prot*,
  85 F.3d 244 (5th Cir. 1996) ...................................................................................5

*CRST Van Expedited, Inc. v. Werner Enter., Inc.*,
  479 F.3d 1099 (9th Cir. 2007) ...................................................................... 10, 23

*FLIR Sys., Inc. v. Parrish*,
  174 Cal.App.4th 1270, 95 Cal.Rptr.3d 307 (2009) ........................................ 9, 16

## TABLE OF AUTHORITIES (CONT'D)

**Page**

*Gemini Aluminum Corp. v. California Custom Shapes, Inc.*,
   95 Cal.App.4th 1249, 116 Cal.Rptr.2d 358 (2002) ..................................... passim

*Gemtel Corp. v. Cmty. Redev. Agency of City of Los Angeles*,
   23 F.3d 1542 (9th Cir. 1994) ................................................................24

*In re Donald*,
   328 B.R. 192 (B.A.P 9th Cir. 2005) ........................................................5

*Jolly v. Eli Lilly & Co.*,
   44 Cal.3d 1103, 245 Cal.Rptr. 658 (1988) ............................................21

*Kuhlman v. Thomas*,
   78 Wash.App. 115, 897 P.2d 365 (1995) ..............................................26

*Landry v. Luscher*,
   95 Wash.App. 779, 976 P.2d 1274 (1999) ............................................28

*Lenzi v. Redland Ins. Co.*,
   140 Wash.2d 267, 996 P.2d 603 (2000) ................................................27

*Lew v. Moss*,
   797 F.2d 747 (9th Cir. 1986) ..................................................................5

*Mark Ind., Ltd. v. Sea Captain's Choice, Inc.*,
   50 F.3d 730 (9th Cir. 1995) ..................................................................17

*Masayesva v. Hale*,
   118 F.3d 1371 (9th Cir. 1997) ..............................................................29

*Moser v. Bret Harte Union High School*,
   366 F.Supp.2d 944 (E.D. Cal. 2005). ............................................ 16, 22

*Rains v. State*,
   100 Wash.2d 660, 674 P.2d 165 (1983) ................................................27

## <u>TABLE OF AUTHORITIES (CONT'D)</u>

**<u>Page</u>**

*Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys., Inc.*,
  180 F.3d 1072 (9th Cir. 1999) ...............................................................24

*Sewer Alert Comm. v. Pierce County*,
  791 F.2d 796 (9th Cir. 1986) .................................................................27

*Stillwell Dev. v. Chen*,
  1989 WL 418783 (C.D. Cal. 1989) ........................................... 10, 11, 13

*Verlande v. PACE Membership Warehouse, Inc.*,
  105 F.3d 1313 (9th Cir. 1997) .................................................................2

*Wilshire Westwood v. Atlantic Richfield Co.*,
  20 Cal.App.4th 732, 24 Cal.Rptr.2d 562 (1993) ..................................19

*Zaldivar v. City of Los Angeles*,
  780 F. 2d 823 (9th Cir. 1986) ...............................................................22

**Statutes**

Cal. Civ. Code
  § 3426.4 .....................................................................................................1
  § 3426.6 ...................................................................................................19

# I

## <u>INTRODUCTION</u>

The Landmark Parties cross-appeal from the District Court's denial of their motion for fees pursuant to Section 3426.4 of the California Civil Code.[1] This cross-appeal arises from the District Court's conflation of the proper legal standards governing the award of fees under Section 3426.4 – the "objective speciousness" of the claims and plaintiff's "bad faith" – with the more arduous burden to prove the entire action "frivolous." Although his three (3) page opinion sets forth the proper legal standards (ER 001-03), the District Court's discussion of the rationale for his decision at oral argument shows that he (erroneously) applied the more stringent standard of frivolousness. (ER 024 & 028-29.) Thus, the District Court's order denying the Landmark Parties their fees should be reversed.

CSC's Responding (Third) Brief on this cross-appeal continues its efforts to shirk responsibility for its conduct. The indisputable timeline of these cases establishes that CSC intended to prolong the litigation against the Landmark Parties' employee in the Washington Action (by adding new parties on the eve of trial). Having failed in that effort, CSC waited until the termination of that case to file this objectively specious action, thereby continuing the litigation burden upon

---

1. For the sake of consistency and brevity, the Landmark Parties will use the same terms in this Reply Brief on Cross-Appeal (Fourth Brief) as they defined in their Principal and Responding (Second) Brief.

its competitor. CSC does not (because it cannot) explain the numerous delays that have led to this serial litigation against the Landmark Parties. Their conduct, as detailed below and in the Landmark Parties' Principal and Responding (Second) Brief, together with the objective lack of merit of their claims, compels the inference that CSC used litigation to burden its competitor – *i.e.* acted in bad faith.

As detailed below, the Landmark Parties request that this Court reverse the District Court's order denying their fees under Section 3426.4.

## II

## THE LANDMARK PARTIES PROVIDED THE CORRECT STANDARDS FOR APPELLATE REVIEW

### A.    De Novo Review Is Proper

CSC contends that the Landmark Parties "ben[t]" and "omitted" "a critical standard of review" and, therefore, the Landmark Parties' appeal is "meritless." (Third Brief at 10-11.) CSC is guilty of misconstruing the Landmark Parties' position and seeking to apply the standard applicable only to factual findings to the legal determinations made by the District Court.

This Circuit holds that *de novo* review is required when determining the proper interpretation and application of the statutory bases for fee awards. (*See* Second Brief at 26; citing *Verlande v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1318-19 (9th Cir. 1997) ("The district court's award of attorneys' fees is discretionary and...review[ed] under an abuse of discretion standard. However,

whether the district court properly interpreted and applied the relevant statute is reviewed de novo." (citation omitted)). Thus,

> We review the award or denial of attorney's fees for abuse of discretion, ***but any elements of legal analysis and statutory interpretation which figure in the district court's decision are reviewable de novo***. We will reverse if the district court misperceives or misapplies the law governing fee awards.

*Coalition for Clean Air v. Southern California Edison Co.*, 971 F.2d 219, 229 (9th Cir. 1992) (emphasis added; citations omitted).

California cases on fee awards are in accord. For example, the California Supreme Court recently affirmed that it reviews *de novo* a trial court's fee order when the determination "amounts to statutory construction and a question of law," or when the "material facts" "are largely undisputed." *Connerly v. State Pers. Bd.*, 37 Cal.4th 1169, 1175-76, 39 Cal.Rptr.3d 788 (2006); *see also Carver v. Chevron U.S.A.*, 97 Cal.App.4th 132, 142, 118 Cal.Rptr.2d 569 (2002) (whether criteria for fees award is satisfied amounts to statutory construction and a legal question). A more "deferential standard of review" is not warranted unless "factual questions predominate" within any "mixed question of law and fact." *Connerly*, 37 Cal.4th at 1175.

The District Court's denial of the Landmark Parties' fee motion is premised entirely on its legal determination that CSC's claims were not "objectively specious" or made in "bad faith." The District Court granted the parties' requests for judicial notice. (ER 010.) Those requests contain all of the (undisputed) "facts" upon which the District Court granted the Landmark Parties' motion to dismiss (*see* ER 12-16) and denied their motion for fees. (ER 001-02.) There are simply no factual determinations on which this Court would need to apply a deferential standard of review.

CSC does not (because it cannot) provide any reason for this Court to deviate from well established appellate review standards governing legal holdings of district courts. As detailed below, the District Court misconstrued the legal standard of "objective speciousness" – making that standard more akin to the standard for "frivolous" – a legal determination which should be reviewed *de novo*. As the foregoing authorities make clear, such legal issues are reviewed without deference to the District Court's determination.

**B.** **CSC's Contention That The "Clear Error" Standard Applicable To Factual Determinations Should Be Applied To This Cross-Appeal Is Meritless**

CSC contends that the appellate review standard applicable to factual determinations should be used to review all issues raised in the Landmark Parties' cross-appeal. CSC contends "the District Court's findings that CSC's claims are

not objectively specious, and that they are not being pursued in bad faith are reviewed for clear error" and that because there is "substantial evidence in the record [of no bad faith], [the district court] had *no* discretion to award Landmark its attorneys fees." (Third Brief at 10.)

As an initial matter, CSC provides few citations to the purportedly "substantial evidence" showing that the District Court had *no* discretion to award fees.[2] More importantly, the issues of whether CSC's claims are "objectively specious" or made in "bad faith" are legal questions reviewed *de novo* – not findings of fact entitled to deference on appeal (*i.e.* clear error review). The only "factual findings" at issue on this appeal are facts contained in Requests For Judicial Notice – facts that are not, and were not, in dispute. (ER 010.)[3]

---

2.    CSC's only factual citations supporting its purported good faith are to two paragraphs of the self-serving Zumwalt Declaration.    (Third Brief at 23.) However, CSC provides no analysis of how the bare testimony of its principal can be considered "substantial evidence" of its purported lack of bad faith.  Moreover, the declaration is contradicted by the objective facts and should be "substantially discounted." *In re Donald*, 328 B.R. 192, 203 (B.A.P 9th Cir. 2005) ("One's own declarations regarding intent are pertinent but ordinarily will be substantially discounted by the court when inconsistent with objective facts." (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986); *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996).

3.    Specifically, the only "facts" upon which the district court denied the Landmark Parties' motion for fees are:  (1) "Several months before this lawsuit, Plaintiff was involved in litigation over the misappropriation claims in Washington state court with Defendants' employee Grant Haskell." (ER 001.) (2) "Plaintiff sought to file an amended complaint to add Defendants to the case." (*Id.*) (3) "The Washington state court denied Plaintiff's motion, finding there was

Thus, contrary to CSC's contentions, the District Court's order denying the Landmark Parties' motion for fees contains no factual findings which would be entitled to the deferential treatment here. This Court reviews the District Court's legal determinations *de novo*.

## III

## <u>THE LEGAL STANDARDS USED BY THE DISTRICT COURT TO DENY FEES ARE MORE STRINGENT THAN THE LANDMARK PARTIES WERE REQUIRED TO PROVE</u>

Lost in the haze permeating CSC's Third Brief is the Landmark Parties' ultimate contention on this cross-appeal – namely that the District Court applied erroneous legal standards making the "objectively specious" and "bad faith" standards more difficult for the Landmark Parties to satisfy. CSC misconstrues the law and the record in an attempt to support the District Court's heightened – and more difficult – standards.

---

inadequate time before trial to add additional parties." (ER 001-02.) (4) "Plaintiff proceeded in its litigation against Haskell." (ER 002.) (5) "Haskell made an offer of judgment to Plaintiff for $200,000 which Plaintiff accepted." (*Id*.) (6) "Judgment became final." (*Id*.) (7) "Plaintiff then sued in California state court against the parties it unsuccessfully sought to add in the Washington state litigation." (*Id*.) (8) "Defendants removed the case to the district court, and brought a motion to dismiss." (*Id*.) (9) "The Court determined that the principles of res judicata applied to this lawsuit and dismissed Plaintiff's complaint." (*Id*.) All of these "facts" are undisputed and stem from the parties' requests for judicial notice.

**A.** **The District Court Blurred "Objectively Specious" And "Bad Faith" With "Frivolous" To Apply A More Rigorous (And Erroneous) Legal Standard To The Fees Motion**

CSC spends much of its Third Brief trying to make this cross-appeal about a "scoreboard" – arguing that the District Court did not state that "objective speciousness requires a victory by Landmark defendants on a 99/1 basis" but instead "stated very clearly, 'I'm putting specious and bad faith at 95/5" and "the motion to dismiss 'gets you in to at least the 85/15, and I'm not going to find speciousness and bad faith at that level.'" (Third Brief, at 14-15.) CSC argues, generally, that the District Court did not apply a frivolous standard, as frivolous "would logically mean a 100/0 margin of victory." (*Id.*) Intentionally or unintentionally, CSC mischaracterizes the Landmark Parties' contention about the District Court's numerical score metaphor at oral argument.

The Landmark Parties cited the District Court's numerical metaphors to show that the District Court was not applying the more relaxed "objectively specious" and "bad faith" standards – but instead focused on a "99/5" or "99/1" analysis – and the "ease" of its decision to dismiss CSC's case. The District Court's metaphor therefore reveals that the standard he applied to deny the Landmark Parties' motion was more akin to "frivolous."

For the record, the District Court raised the scoreboard metaphors on his own without prompting from the Landmark Parties:

7

> I mean you won the previous motion, but we're discussing whether you won it on a 70/30 or 80/20. Let me tell you I'm putting specious and bad faith at 95/5, and you're pushing me up here saying you want it at 85/15 but that's not 95/5, and ***I'm not sure I'd call a 95/5, if you understand my metaphor here, to be specious and in bad faith....That might be 99/1.***

(ER 024 (emphasis added).) Later, the District Court concluded:

> Mr. Avanzado, I've been trying to recall – it wasn't that long ago – how easy it was to rule in your favor previously. It wasn't that easy. [¶] We struggled a bit with it, which I think gets you in to at least the 85/15, and I'm not going to find speciousness and bad faith at that level.

(ER 28-29.)

The District Court's discussion on the "ease" of his decision on the motion to dismiss – and whether the "score" was 85/15, 99/5 or 99/1 – shows an erroneous focus on the level and extent that CSC's claims were "meritless." In doing so, the District Court effectively equated "objective speciousness" and "bad

faith" with "frivolous" (particularly since he viewed the proper standard to be "99/1" or "95/5") – a standard more stringent than the law demands.

California law provides that the objectively specious action need not be frivolous. *See, e.g.*, *FLIR Sys., Inc. v. Parrish*, 174 Cal.App.4th 1270, 1276, 95 Cal.Rptr.3d 307 (2009) (rejecting argument that Section 3426.2 requires finding that action was "frivolous" and holding that "[o]bjective speciousness was established by evidence that appellants had an anticompetitive motive in filing the lawsuit"); *Gemini Aluminum Corp. v. California Custom Shapes, Inc.*, 95 Cal.App.4th 1249, 1262, 116 Cal.Rptr.2d 358 (2002) ("We find…section 3426.4 requires objective speciousness of the plaintiff's claim, as opposed to frivolousness").

Federal courts which have analyzed these issues are in accord. *CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1112 (9th Cir. 2007) ("The California Court of Appeal has interpreted the statute's 'bad faith' element to require "objective speciousness of the plaintiff's claim...and its subjective bad faith in bringing or maintaining the claim." (quoting *Gemini*, 95 Cal.App.4th at 1262)); *Alamar Biosciences, Inc. v. Difco Lab., Inc.*, 1996 WL 784495 at *2 (E.D. Cal. 1996) (finding "objective speciousness" and "subjective misconduct" for knowing assertion of time-barred claims); *Stillwell Dev. v. Chen*, 1989 WL 418783 (C.D. Cal. 1989) (same and holding "[w]hile the deterrent purpose of §3426.4

9

requires subjective misconduct, the speciousness of the claim is some evidence upon which the court could rely in its assessment of subjective misconduct.").

Thus, by focusing on how "easy" it was to decide the Landmark Parties' motion to dismiss, the District Court elevated "objective speciousness" and "bad faith" to frivolous. The proper analysis should have been (a) whether CSC's claims even though facially valid were objectively merit meritless (they were) and (b) whether CSC's conduct revealed subjective misconduct in filing and pursuing the case (they did). As detailed below, had the District Court applied the proper legal standards, the Landmark Parties should have prevailed on their motion for fees.

## B. __CSC's Claims Are Objectively Specious__

### 1. __The Proper Legal Standard For "Objectively Specious"__

Objective speciousness is not frivolousness. *Gemini*, 95 Cal.App.4th at 1262. Objectively specious claims "may superficially appear to have merit." *Id.* at 1261-62. The *Gemini* court explained that "specious" is defined as "apparently right or proper: superficially fair, just, or correct, but no so in reality…." *Id.* at 1261 (quoting *Stillwell*, 1989 WL 418783).

Here, CSC's claims may have been "facially valid" – but were substantively (and objectively) barred by res judicata. The Landmark Parties were

required to do nothing more than show the indisputable fact that CSC's claims were objectively without merit even if they appeared to have merit on their face.

**2.    The Landmark Parties Do Not Have To Show That CSC's Claims Had Absolutely No Merit To Establish That The Are "Objectively Specious"**

CSC argues that "objective speciousness exists *only* where there is a complete lack of evidence to support a claim," such as where the evidence shows the trade secret has no "economic value."  (Third Brief at 16-17;20-21;23.)  The District Court similarly held that courts have found objective speciousness "when there is a complete lack of evidence to support the claim or when the claim of misappropriation has no economic value."  (ER 002.)  The standard for "objective speciousnerss" is not so severe.

As an initial matter, these standards again seek to increase the Landmark Parties' burden to show "objective speciousness."  To require the Landmark Parties to show a "complete lack of evidence" for CSC's claims is akin to requiring proof that CSC's claims are "frivolous."  *See Gemini*, 95 Cal.App.4th at 1262 ("frivolous" means "totally and completely without merit").  Courts have rejected such a high standard under this statute.  *Gemini*, 95 Cal.App.4th at 1262 ("section 3426.4 does not contain the word 'frivolous'").  Instead, the Legislature intended that Section 3426.4 and the prospect of fee awards would act "as a deterrent to specious claims of misappropriation."  *Gemini*, 95 Cal.App.4th at 1262

("the Legislature was concerned with curbing 'specious' actions for misappropriation of trade secrets and such actions may superficially appear to have merit."); *Stillwell*, 1989 WL 418783 (citing the comments to Section 3426.4 as set forth in M. Jager, Trade Secrets Law, APP.A1 at 13 (1988)).

Moreover, nothing in Section 3426.4, the legislative commentary thereto or the plain language definition of the words "objective speciousness" suggests that misappropriation claims dismissed at the pleadings stage (before the admission of "evidence") are immune from being held to be "objectively specious." Indeed, to hold otherwise would run afoul of the Supreme Court's recent decisions which trumpet the need for exposing meritless claims on motions to dismiss. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-60, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (where plaintiff does not allege sufficient plausible facts, this "basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court" to avoid the expense of discovery); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (pleadings require "more than a sheer possibility that a defendant has acted unlawfully" (quoting *Twombly*, 550 U.S. at 556)).[4/]

---

4. CSC claims "it would be inappropriate for this Court" to apply *Iqbal*, *Twombly*, or other "federal pleading standards" to this case because "[t]he Complaint in this case was first filed in state court and, therefore, CSC never briefed these cases. (Third Brief, at 9-10.) CSC does not (because it cannot provide any authority in support of this contention. CSC also ignores the legal

In the Washington Action, CSC had years to investigate facts and take discovery (including discovery against the Landmark Parties), but yet alleged few non-conclusory facts in its complaint here. Instead, CSC pleads for the right to extend this litigation on the fantasy that "further wrongful acts" "will come to light once discovery is permitted to proceed in this case." (Third Brief at 8.) The Supreme Court's recent decisions preclude such a result – holding that "the doors of discovery" are not "unlocked" "for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S.Ct. at 1250; *Twombly*, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery….").

In sum, the Landmark Parties are not required to prove the *complete lack of evidence* on all substantive elements of CSC's claims to prove them to be "objectively specious." The District Court erred in applying such a standard below.

## C. CSC's Claims Were Made In Bad Faith

### 1. Subjective Bad Faith May Be Inferred From Circumstantial Evidence

CSC's subjective bad faith can be proven through circumstantial evidence. "A subjective state of mind will rarely be susceptible of direct proof;

---

effect of removal of state court pleadings. In any event, CSC did not raise this objection to the application of federal pleading authorities below – and therefore waived any right to complain now.

usually the trial court will be required to infer it from circumstantial evidence." *Gemini*, 95 Cal.App.4th at 1263. Indeed, "the timing" of an action can "raise an inference of bad faith." *Gemini*, 95 Cal.App.4th at 1263; *FLIR*, 174 Cal.App.4th at 1278. Moreover, "bad faith may be inferred where the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised." *Gemini*, *supra*, at 1264 (citing *Alamar*, at *3; *FLIR*, 174 Cal.App.4th at 1278).

In response, CSC contends that subjective bad faith may be inferred *only* where the evidence shows a party brought a trade secret claim with the intent to cause unnecessary delay or to harass, or otherwise harbored an improper motive. (Third Brief, at 22 (citing *FLIR*, 174 Cal.App.4th at 1277; *Gemini*, 95 Cal.App.4th at 1263).) CSC further contends that bad faith can be inferred *only* "when an attorney repeatedly and vexatiously presents 'facts' and 'law' to the Court that are plainly wrong or misleading, which needlessly prolong and multiply the summary judgment proceedings and materially increase the burden on the Court." (Third Brief at 19; claiming that the Landmark Parties "misstated the holding" in *Moser v. Bret Harte Union High School*, 366 F.Supp.2d 944 (E.D. Cal. 2005).) CSC is mistaken.

Neither the *FLIR* nor *Gemini* courts limited their holdings or otherwise restricted the circumstances under which bad faith can be inferred. In

14

*Moser*, contrary to CSC's contentions (Third Brief at 19), the court inferred bad faith from counsel's conduct, not upon direct evidence. *Moser*, 366 F.Supp.2d at 979 ("When an attorney repeatedly and vexatiously presents "facts" and "law" to the Court that are plainly wrong or misleading, which needlessly prolong and multiply the summary judgment proceedings and materially increase the burden on the Court, bad faith can be inferred."). Even a "colorable claim" can lead to sanctions when a litigant is "substantially motivated" by "*mala fides*." *Mark Ind., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995) (affirming district court's inference of bad faith from attorney's conduct)).

In sum, nothing in the cases cited by CSC, or any other authorities which have inferred bad faith from the conduct of counsel or the parties, supports CSC's contention that it can be shielded from such inferences here. The facts and timing of CSC's litigious conduct compels a finding that CSC extended the litigation against the Landmark Parties in bad faith.

### 2. CSC's Delay In Bringing This Case Against The Landmark Parties Continues Its Pattern And Practice Of Using Litigation Against Its Competitors

In its briefs filed before this Court, and in the papers filed before the District Court, CSC does not (because it cannot) explain its serial filings which sought to keep the Landmark Parties or its employee tied up in litigation for as

long as possible.  In the context of CSC's known litigious history, the indisputable timing of events compels the inference that CSC acted in bad faith.

CSC and its principal, Zumwalt, settled their "divorce" from Kranske in May 2006 – executing the Release (ER 455-69), acknowledging that Kranske and Landmark would compete with CSC (ER 461-62 ¶6) and confirming that "[n]othing…[would] limit or restrict in any manner" the "businesses, activities or investments" that Kranske and Landmark would undertake.  (ER 461:25-62:5.)  In addition, CSC and Zumwalt forever and generally released Landmark, Kranske and Harrison from all claims, known and unknown.  (ER 462 ¶9.)  CSC and Zumwalt assumed "the risk of possible discovery of additional or different facts" and waived the protections of Section 1542 of the California Civil Code.  (ER 463 ¶¶10-11.)

The ink was barely dry on the parties' Release when CSC sued Landmark's vice president, Haskell, in the Washington Action some five months later for purported trade secret misappropriation.  (ER 475-96.)  After losing most of their claims on summary judgment (ER 567-68 ¶F), CSC sought to extend the Washington Action in January 2008 – six months before trial – by adding the Landmark Parties as defendants therein.  (ER 223-66.)  The Washington court rebuffed CSC because of the "inadequate time to add additional parties which could have been brought in months ago."  (ER 383.)

The Washington Action continued for over another year until CSC accepted an offer of judgment in February 2009 (ER 621) and the parties dismissed the Washington Action a month later. (ER 624-26.) CSC did not file any action – in any forum – against the Landmark Parties from January 2008 through the end of the Washington Action in March 2009. Only then, when the specter of litigation over the Landmark Parties and their employees seemed to be over, did CSC file its action in this (in June 2009). (ER 636-59.)

CSC does not (because it cannot) provide a valid reason for its serial litigation conduct which – had it been successful – would have prolonged the burden of litigation against the Landmark Parties for many years. CSC waited until the eve of trial in the Washington Action before moving to add the Landmark Parties to that case – knowing that the addition of new defendants at that late stage would result in another delay in the trial in that case. Having failed at that gambit, CSC then waited until the Washington Action was concluded – and judgment entered – before filing this action below.[5]

_____

5. CSC speculates, because its claims against the Landmark Parties "were not compulsory," that the Washington court "would have ruled the other way" if it had "thought for a moment that CSC might lose the claims altogether." (Third Brief at 39.) CSC's speculation ignores its inexplicable delay in seeking to add parties to the Washington Action until the eve of trial, resulting in that court's determination that there was "inadequate time" to add parties to that case. (*See* ER at 383.) More importantly, CSC's speculation ignores its delay in bringing this action – since if CSC had brought this case in the year and a half between the Washington court's order and the judgment in the Washington Action, res judicata would not be an

CSC – under the control of Zumwalt – has been judicially found to use litigation as a strategy against its competitors. *Contemporary Services Corporation v. Staff Pro Inc.*, 152 Cal.App.4th 1043, 1048-49, 61 Cal.Rptr.3d 434 (2007). Since Kranske left, CSC and Zumwalt have filed multiple lawsuits against former employees who have started competing ventures or joined CSC's former clients. (ER 274-95, 296-312.)[6/]

Furthermore, CSC (a) pressed on with this objectively specious case despite a detailed notice of "the action's fatal shortcomings" (ER 1030-33), (b) failed to explain the purported differences between the trade secrets in the Washington Action that were summarily adjudicated and purportedly at issue in this action (*see* ER 1103:15-19 (explaining that the evidence in the Washington Action to be "critical" to its claims)) and (c) propounded procedurally improper discovery demands and ex parte motion in this case (ER 1026-28; 1064-67).

Taken as a whole, therefore, CSC's conduct against the Landmark Parties and their employees compels the inference that CSC brought this latest litigation in bad faith.

---

issue. (Of course, CSC's claims are objectively meritless for other reasons besides the effects of res judicata. (*See* Section III.C.4, *infra*.))

6.     CSC repeats its contention that Kranske was an owner during trial in the *Staff Pro* case. (First Brief, at 21; Third Brief at 2-3.) Zumwalt was a named party in that case (Kranske was not) and, at all relevant times, was the controlling shareholder with a majority 51% interest in CSC. (*See* ER 455 (Release ¶B).)

**3.    CSC Cannot Escape The Consequences Of Its Conduct Because The Legal Analysis Was "Complicated"**

In essence, CSC contends that the res judicata analysis here is so "slippery" and "complicated" – because the Landmark Parties "are plainly not the same parties as 'Haskell'" – that they cannot be found to have filed these claims in bad faith. (Third Brief at 15-16.) Nonsense.

In *Alamar*, the court rejected the identical contention that the plaintiff's mistake or failure to recognize the legal significance of facts could somehow immunize conduct that would otherwise amount to bad faith. The *Alamar* court held that the plaintiff's "internal errors in judgment" did not detract from plaintiff's bad faith. *Alamar*, 1996 WL 784495 at *1, n.1 & *2(citing *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 245 Cal.Rptr. 658 (1988)).[7] It is well established that all plaintiffs "are charged with knowledge of matters which would have been revealed by a reasonably diligent investigation." *Alamar*, 1996 WL 784495 at *2

---

7.    The *Eli Lilly* court held a plaintiff's failure to investigate or failure to understand the "legal significance of known facts or the identity of the wrongdoer" is irrelevant to the legal (statute of limitations) analysis. *Eli Lilly*, 44 Cal.3d at 1111, 1112.

(citing Cal. Civ. Code §3426.6; *Wilshire Westwood v. Atlantic Richfield Co.*, 20 Cal.App.4th 732, 740-44, 24 Cal.Rptr.2d 562 (1993).)[8/]

Similarly, the *Moser* court rejected counsel's defense that the record was "complicated" and "voluminous" which led to her "mistakes." *Moser*, 366 F.Supp.2d at 977. Indeed, the court found that if counsel "could not deal with the 'complexities' of the case," she had "an ethical obligation to ask for help" (*id.*) and that "[i]gnorance is no defense." *Id.* at 985 (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986)).

These authorities confirm the well grounded rule that an attorney's "ignorance" or "mistake" of the law will not shield them from the consequences of their conduct. CSC's failure to research or comprehend res judicata is not a valid defense. Nor does CSC's purported failure to understand other legal concepts of collateral estoppel, claim splitting, California Civil Code Section 1542, the Release, preemption under California statutes, statutes of limitation, agency principles, employer-employee relationships, satisfactions of judgments, and/or federal pleading standards – all of which further establish the objective

---

8. The *Wilshire Westwood* court held "[a] plaintiff is charged with presumptive knowledge" once he "has the opportunity to obtain knowledge from sources open to his investigation." *Wilshire Westwood*, 20 Cal.App.4th at 740. "If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *Id.*

speciousness of its claims (*see* Section III.C.4, *infra*) – excuse CSC from its bad faith in bringing this barred action against the Landmark Parties.[9]

### 4. CSC's Complaint Fails To State A Claim For Many Reasons Other Than The Bar Of Res Judicata

CSC's contentions on appeal evidence a conscious attempt to minimize the defects in this lawsuit against the Landmark Parties. Even though the District Court dismissed CSC's complaint because of the res judicata doctrine, CSC's pleading was fatally flawed for many other reasons. CSC's misappropriation and interference claims are barred by applicable statutes of limitations. (ER 419:22-420:16.) CSC's Release also precludes all claims made in its complaint. (ER 414:24-417:6.) CSC's claims are also precluded by the satisfaction of judgment in the Washington Action. (ER 417:7-418:15.) The California Uniform Trade Secrets Act preempts CSC's common law and statutory claims that based on allegations of trade secret misappropriation. (ER 418:16-

---

9. CSC argues that *Alamar* is inapplicable because it involved a "simple application of a statute of limitations to well established dates." (Third Brief, at 10-11;15.) CSC misunderstands the *Alamar* case and import of that case to the Landmark Parties' contentions. The *Alamar* decision stands for the proposition that Section 3426.4 fees are properly awarded, and bad faith found, when a plaintiff files a procedurally barred claim. Thus, the *Alamar* court's analysis and rationale are applicable to the analysis here – especially because CSC's claims, like the claims in *Alamar*, were found to be barred (albeit by res judicata instead of statutes of limitations). *Alamar*, 1996 WL 784495 at *2; *accord CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 1112 (9th Cir. 2007) (affirming attorney fee award granted after 12(b)(6) dismissal of claim).

419:21.)  Collateral estoppel precludes the claims based upon the same purported trade secrets already litigated in the Washington Action.  (ER 412:18-14:23.)  CSC cannot state a claim under California Penal Code.  (ER 420:17-422:2.)  CSC's claims for unjust enrichment and civil conspiracy are not recognized.  (ER 422:3-12.)  Opposing counsel timely notified CSC of all of these infirmities – and CSC pressed on with the litigation in the face of such notice.  (ER 1030-33.)[10/]

In sum, any proper review of CSC's claims establishes that, although facially valid, res judicata, collateral estoppel, statutes of limitation and a variety of other legal defects make such claims substantively meritless.  CSC's decision to file, then continue, the lawsuit below is further, circumstantial evidence which compels the inference that it acted in bad faith.

**5.    The Res Judicata Analysis Is Not As Complicated As CSC Makes It Seem**

In any event, CSC contends that a proper res judicata analysis was so complicated and "slippery" that CSC is insulated from any finding of bad faith. (Third Brief at 15-16.)  CSC's contention is groundless.

---

10.    This Court may consider the Landmark Parties' other arguments raised below not only as circumstantial evidence of bad faith – but also as alternative grounds on which to affirm the District Court's judgment of dismissal.  (*See* Second Brief, at 62-63 (citing *Recording Indus. Ass'n of Am. v. Diamond Multimedia Sys., Inc.*, 180 F.3d 1072, 1076 n.3 (9th Cir. 1999); *Gemtel Corp. v. Cmty. Redev. Agency of City of Los Angeles*, 23 F.3d 1542, 1546 (9th Cir. 1994)).)

In its Third Brief, CSC attempts to make the analysis more complicated than it is. However, the Landmark Parties provided CSC with notice of the relevant authorities and the straightforward res judicata analysis at the outset of this case. (*See* ER 1030-33.) The res judicata analysis under Washington law is neither "slippery" nor overly complex. (*See* Second Brief at 33-52.) Any comparison of the allegations in this case and in the Washington Action reveal that the claims arise from the same transactional nucleus of facts – the purported theft of trade secrets by Haskell for the Landmark Parties – as even CSC has acknowledged in their declarations seeking to "preserve" the same evidence in this case that was at issue in the Washington action. (*See* Declarations submitted by CSC below (ER 1070, ¶¶8-9; ER 1075 ¶¶15-24; ER 1076, ¶27).)

Moreover, the "privity" analysis – which CSC contends makes the analysis so "complicated" (Third Brief at 15) – is also straightforward. At bottom, the Landmark Parties are Haskell's employer and its principals, and CSC sues the Landmark Parties here based entirely on Haskell's purported conduct (theft of trade secrets) as Landmark's employee. Washington law is clear that the Haskell and the Landmark Parties are in privity. *Kuhlman v. Thomas*, 78 Wash.App. 115, 120, 121-22, 897 P.2d 365 (1995) (employer-employee relationship sufficient to establish privity where the subject matter of successive litigations is the same).

As detailed below, CSC's attempt to make the analysis more complicated – in support of their effort to be excused for their bad faith – is misplaced.

### a. CSC Seeks To Limit The Res Judicata Doctrine Contrary To Well-Settled Authorities

CSC's contentions essentially would eviscerate the res judicata doctrine unless the actions and parties are identical. (*E.g.*, Third Brief at 30 ("Kranske and Harrison may not hide behind the Haskell lawsuit because neither of them were parties to the Haskell lawsuit"); *Id.* at 34 (arguing that preclusive effect only available where the suit is "for the very same, and no other conduct"). Of course, that is not the law. (*See* Second Brief at 33 (citing *Rains v. State*, 100 Wash.2d 660, 663, 674 P.2d 165 (1983); *Sewer Alert Comm. v. Pierce County*, 791 F.2d 796, 798-99 (9th Cir. 1986)).)

Res judicata bars CSC from litigating claims that either were, or should have been, litigated in the Washington Action. *Lenzi v. Redland Ins. Co.*, 140 Wash.2d 267, 280, 996 P.2d 603 (2000); *see also Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982). As the District Court held, CSC cannot split its claims against Haskell's employers for the very same conduct (and purported trade secrets) at issue in the Washington Action.

### b.    CSC Attempts To Shift Fault For Its Litigation Conduct

CSC effectively blames the Landmark Parties for their serial litigation strategies, arguing that it was compelled to bring this action because the Landmark Parties were not added, and did not agree to be added, to the Washington Action. (*See* Third Brief at 26.)  Again, CSC fails to explain its delay in seeking to add the Landmark Parties to the Washington Action until the eve of trial – leading that court to deny their attempts because of the "inadequate time to add additional parties which could have been brought in months ago." (ER 383.)  CSC also fails to explain its failure to immediately sue the Landmark Parties in January 2008 – after the Washington court denied their strategy to expand that case on the eve of trial – and their filing of the action below only after the judgment in the Washington Action became final.  (*See* ER 624-26; 636-59.)  CSC intended to create the kind of serial, duplicitous litigation that the res judicata doctrine precludes.  *See Landry v. Luscher*, 95 Wash.App. 779, 783, 976 P.2d 1274 (1999) ("the purpose of the res judicata doctrine is to ensure the finality of judgments and eliminate duplicitous litigation").

CSC's contentions that the Landmark Parties "waived" or are estopped from asserting res judicata are also groundless.[11]  Despite CSC's

---

11.    CSC fails to recognize the differences between "waiver" and "estoppel." (*See* Third Brief at 25-26.)  CSC argued below that "Landmark forced CSC to bring this alleged 'serial' action by vigorously and successfully opposing CSC's

contentions to the contrary, Washington law does not support CSC's "waiver" argument – since both suits must be pending at the same time for a defendant to "waive" the claim-splitting or res judicata defense. *Landry*, 95 Wash.App. at 786 ("The [defendants] could not waive the defense of claim splitting because the [plaintiff's] suits were not pending at the same time."). Similarly, federal law does not support CSC's judicial estoppel argument since CSC's unreasonable delay in its attempt to add the Landmark Parties to the Washington Action is the reason for that court's denial of their litigation strategy (ER 383). *Masayesva v. Hale*, 118 F.3d 1371, 1382 (9th Cir. 1997) (rejecting judicial estoppel argument because position was not adopted by court).

In sum, CSC's attempts to shift blame for their own conduct – their delay in seeking to add the Landmark Parties to the Washington Action and failure to file this action before the preclusive judgment was entered in the Washington Action – should not cloud the conclusion that CSC acted in bad faith in pressing this objectively specious action.

---

efforts to join Landmark to the prior Washington Action." (ER 324.) That is a judicial estoppel argument. (*See* Second Brief at 57-60.) CSC's never presented its new "waiver" argument to the District Court.

# IV

## CONCLUSION

For all the foregoing reasons, the Landmark Parties respectfully request that the Court: (1) affirm the District Court's order dismissing CSC's complaint; (2) affirm the District Court's exercise of discretion to dismiss the case without leave to amend; and (3) reverse the District Court's order denying the Landmark Parties' motion for attorneys' fees. The Landmark Parties further request that the Court remand this case to the District Court for a determination of a reasonable fee award to the Landmark Parties, including their fees and costs on appeal.

DATED: July 28, 2010

THE AVANZADO LAW FIRM

By: /s/    *Melvin N.A. Avanzado*    /s/
Melvin N.A. Avanzado
Attorneys for Defendants and Appellees
Landmark Event Staffing Services, Inc., Peter
Kranske and Michael Harrison

27

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rules 28.1(e)(2)(C) and 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 6267 words, inclusive of footnotes and other parts of the brief set forth in Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure. In calculating the number of words, the undersigned counsel relied on the word count function of Microsoft Word 2007.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007, Times New Roman, 14-point font.

DATED: July 28, 2010

THE AVANZADO LAW FIRM

By: /s/      *Melvin N.A. Avanzado*      /s/
Melvin N.A. Avanzado
Attorneys for Defendants and Appellees
Landmark Event Staffing Services, Inc., Peter
Kranske and Michael Harrison

28

## <u>CERTIFICATE OF SERVICE</u>

| 9th Circuit Case Number(s): | 09-56473 |
|---|---|
| | 09-56662 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

     I hereby certify that I electronically filed the forgoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on **July 28, 2010.**

     I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED: July 28, 2010       By: /s/    *Melvin N.A. Avanzado*    /s/
                                         Melvin N.A. Avanzado

# COPY OF LETTER CONFIRMING ORAL EXTENSION

### THE AVANZADO LAW FIRM

1880 CENTURY PARK EAST
SUITE 1404
LOS ANGELES, CALIFORNIA 90067
310.552.9300 TELEPHONE
310.388.5330 FACSIMILE
www.avanzadolaw.com

JOSEPH M. NICCHITTA
<joe@avanzadolaw.com>

July 1, 2010

**VIA U.S. MAIL AND ELECTRONIC MAIL**

C. Todd Norris, Esq.
Bullivant Houser Bailey PC
601 California Street, Suite 1800
San Francisco, California 94108-2823
<todd.norris@bullivant.com>

      Re:    *Contemporary Services Corp. v. Landmark Event Staffing Services, et al.*
              Ninth Circuit Court of Appeals, Appeal Nos. 09-56473, 09-56662

Dear Mr. Norris:

        This letter is to notify you that the Court has granted the oral request of Appellees Landmark Event Staffing Services, Inc., Peter Kranske and Michael Harrison for an extension of fourteen (14) days to file their fourth brief on their cross-appeal. Appellees' fourth brief is now due on **July 28, 2010**.

        Please call me if you have any questions.

        Sincerely,

        *Dictated but not read.*

        Joseph M. Nicchitta